# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION
# CIVIL ACTION NO. 3:15-CV-762-GNS

SUSAN JEAN KING,                                                          Plaintiff,

v.

TODD HARWOOD,                                                            Defendant.

## Memorandum Order and Opinion

Before the Court is a motion to quash a third party subpoena filed by a former defendant, the Kentucky State Police ("KSP"). (DN 36.) Plaintiff Susan Jean King ("King"), the subpoenaing party, filed a response to KSP's motion on October 16, 2017. (DN 40.) KSP replied on October 30, 2017. (DN 42.) For the reasons stated below, the Court **GRANTS** KSP's motion to quash in part and **DENIES** the motion in part.

### I. Statement of Facts

Because of the long factual and procedural history of this case, the Court will only detail the facts necessary to evaluate KSP's motion to qaush. For a more thorough recitation of the facts and procedural history of this case, see *King v. Harwood*, 2017 WL 6029633 (W.D. Ky. Dec. 5, 2017).

In her complaint, King named KSP as one of several defendants in this lawsuit filed under 42 U.S.C. §1983. (DN 1.) On June 1, 2016, this Court granted KSP's motion for summary judgment, which the Sixth Circuit subsequently affirmed on appeal. (DN 18.); *King v. Harwood*, 852 F. 3d 568, 692 (6th Cir. 2017). The sole remaining defendant, Todd Harwood ("Harwood"), filed a motion to stay the district court proceedings on September 7, 2017, while he appealed the Sixth Circuit's decision to the Supreme Court of the United States. (DN 34.)

Meanwhile, on September 8, 2017, King served KSP with a subpoena *duces tecum*, that, in full, requested:

> (1) A complete copy of the personnel file for Todd Harwood. This request includes both the personnel files maintained by the Human Resource Brand and at any post that Todd Harwood assigned.
>
> (2) A complete copy of Todd Harwood's training file maintained by the Human Resource Branch and at any post that Todd Harwood was assigned.
>
> (3) A complete copy of any internal affairs investigation, whether such file is maintained by the Internal Affairs Branch or at a KSP post, which Todd Harwood was the subject of the investigation.
>
> (4) Any complaints, administrative inquires, disciplinary actions, documented counseling, and/or written reprimand, issued to Todd Harwood for the time period of January 1, 2006, to the present.
>
> (5) A complete copy the [sic] entire case file for the Breeden Murder Investigation. This request includes, but is not limited to, all documents relating to any physical or documentary evidence, notes, audiotapes, transcripts, videotapes, photographs, forensic evidence, and/or test results from the investigation.
>
> (6) Any memorandum, internal files, and/or documentation, which are maintained by KSP, any branch of KSP, or KSP post, that in any way relates to the Breeden Murder Investigation.
>
> (7) Any documentation relating to a peer review of the Breeden Murder Investigation.
>
> (8) Any reports made to any KSP post relating to the Breeden Murder Investigation.
>
> (9) Any audiotapes and/or videotapes of any polygraph tests performed in the Breeden Murder Investigation. This request includes, but is not limited to, any notes taken or made by the polygraph examiner.
>
> (10) Any videotapes, audiotapes, and/or transcripts of any interviews taken as part of the Breeden Murder Investigation.
>
> (11) Any documents relating to training, training materials, manuals, books, advertisements, or instructional documents that Todd Harwood received or was provided, including but not limited to, any records of classes, seminars, or training sessions in which Todd Harwood took part, that relates to investigating murders,

investigating cold cases, and the Reid Technique of interviewing and interrogation.

(12) Any documents comprising policies and procedures and/or standard operating procedures adopted by KSP at any time between May 1, 2006, to the present, as well as all amendments or changes to any such policies and procedures and/or standard operating procedures, that relate to cold case investigations.

(13) Any photographs that in any way relate to or where taken as part of the Breeden Murder Investigation.

(14) Todd Harwood's time records for the years 2006, 2007, 2008, and 2012.

(15) Any e-mails, for the time period of May 1, 2006, to the present, which in any way relate to, or contain, the following:

    (i)  Susan King,
    (ii)  KSP case number 05-98-1121, and/or
    (iii) Kyle Breeden.

(DN 36-1, #464–65.) While Harwood's motion was pending before the Court, KSP filed the present motion, largely making the same argument as Harwood did in his motion to stay. (DN 36.) On December 5, 2017, the Court denied Harwood's motion to stay. (DN 44.)

## II. Applicable Law

Federal Rule of Civil Procedure 45 governs the scope of subpoenas served upon third parties. Rule 45 allows a party to command a non-party to attend a deposition, produce documents, or permit an inspection of premises. Fed. R. Civ. P. 45(a)(1). Rule 45 requires the Court to quash or modify a subpoena that "requires disclosure of a privileged or protected matter" if no exception or waiver applies. Fed. R. Civ. P. 45(c)(3)(A)(iii). It also requires the Court to quash or modify a subpoena when it "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv).

## III. Analysis

In its written submissions, KSP makes objections to several of King's subpoena requests (nos. 1, 3–4, 11, 14, and 15). (DN 42, #498–99.) KSP argues that Subpoena Request No. 1 (Harwood's complete personnel file) is overbroad because the file may include Harwood's medical records and information not relevant to the case, namely details regarding his private life. (*Id*. at 498.) KSP objects to Subpoena Request Nos. 3 and 4 (all internal affairs investigations involving Harwood and all disciplinary documents Harwood received, respectively), arguing that the subpoena, in part, seeks information irrelevant to King's lawsuit because the requested information falls outside the disputed time periods. (*Id*.) KSP also invokes the work product doctrine, attorney-client privilege, and executive privilege, arguing that they all apply to its disciplinary records. (*Id*.) In regards to Subpoena Request No. 11 (a complete record of any training Harwood received while employed by KSP), KSP argues that producing all information related to any training Harwood received would be unduly burdensome. (*Id*. at 499.) KSP objects to a part of Subpoena Request No. 14 (Harwood's time records for 2012), arguing that his 2012 time records have no bearing on the case and are irrelevant. (*Id*.) Finally, KSP objects to Subpoena Request No. 15 (all emails relating to King or the Breeden murder investigation) because it is unduly burdensome and seeks privileged information. (*Id*.)

King argues that KSP has waived any objection it might have to her subpoena requests because it did not object in writing within fourteen days of receiving the subpoena. (DN 40, #486.) King argues that because KSP was served on September 14, 2017, its motion to quash, filed on October 10, 2017, was untimely pursuant to Federal Rule of Civil Procedure 45(c)(2)(B). (*Id*.)

The Court notes that the bulk of the parties' written submissions focus on the probability that the Supreme Court of the United States will grant Harwood's petition for writ of certiorari. Whether the Supreme Court grants his petition or not has no bearing on the Court's analysis of whether King's subpoena should be quashed or modified. Thus, the Court will disregard both parties' discussions of Harwood's petition for writ of certiorari. Moreover, as KSP did not raise specific objections to all of King's subpoena requests, the Court will consider any objections to Subpoena Requests 2, 5–10, and 12–13 to have been waived.

### A. KSP's Objection to King's Subpoena is Timely

As noted above, King's main argument is that any objection that KSP has to her subpoena is untimely because KSP failed to object in writing within fourteen days. (DN 40, #486.) In support of this argument, King cites Fed. R. Civ. P. 45(c)(2)(B), but quotes from language found in (d)(2)(B):

> [a] person commanded to produce documents . . . may serve on [the requesting party] a written objection to inspecting, copying, testing, or sampling any or all of the materials . . . . The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served.

(*Id.*). King claims that because KSP did not serve her with a written objection to the subpoena request within fourteen days of receipt, any objections it has to the subpoena based on attorney-client privilege are waived. (*Id.* at 486–87.) As a result, King appears to argue, any subsequent motion to quash is untimely. (*Id.* at 487 – 88.) KSP responds with two theories. First, it argues that Rule 45(d)(3)(A) (the section of the Rule explaining the procedure for quashing or modifying a subpoena) does not require that a party who wishes to file a motion to quash a subpoena must first serve written objections to the subpoenaing party. (DN 42, #495–97.) But even if it did, KSP argues, its actions leading up to the filing of the present motion qualified it for

an exception where it could still make timely objections to the subpoena but not be required to send King written objections. (*Id.* at 493–94.)

A party objecting to a subpoena must only (1) object to the subpoena and (2) state the claim of privilege within fourteen days of service. *In re Dep't of Justice Subpoenas to ABC*, 263 F.R.D. 66, 70 (D. Mass. 2009) (citing *Tuite v. Henry*, 98 F. 3d 1411, 1416 (D.C. Cir. 1996)). The exception KSP refers to overrides the ordinary rule that bars subpoenaed entities from objecting to the subpoena if they failed to serve the subpoenaing party with written objections within Rule 45's timeframe. *American Elec. Power Co., Inc. v. U.S.*, 191 F.R.D. 132, 136 (S.D. Ohio 1999) (citing *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996)). As the *Concord Boat* Court stated, "in unusual circumstances and for good cause, however, the failure to act timely will not bar consideration of objections." *Concord Boat*, 169 F.R.D. at 48. Such unusual circumstances include those where: (1) the subpoena is facially overbroad and exceeds the bounds of fair discovery; (2) the subpoenaed witness is a non-party acting in good faith; and (3) counsel for the witness and counsel for the subpoenaing party were in contact concerning the witness' compliance prior to the time the witness challenged the legal basis for the subpoena. *Id.* (citations omitted).

King has misinterpreted Rule 45. While King is correct in asserting that a subpoenaed party must serve written objections within fourteen days or else it waives its objections, the failure to do so does not act as a per se bar to the filing of all motions to quash. *See, e.g.*, Fed. R. Civ. P. 45(3)(B) (no requirement that the motion be "timely" for the court to quash subpoenas seeking trade secret information or an un-retained expert's opinion). In any event, the second and third "unusual circumstances" are present here. KSP is no longer a party in this action, having been dismissed with prejudice by this Court on June 1, 2016, a decision subsequently

affirmed by the Sixth Circuit on March 27, 2017. *King v. Harwood*, 852 F. 3d 568 (6th Cir. 2017). It has also acted in good faith, as demonstrated by its general counsel telephoning King's counsel a few days after receiving notice of the subpoena and expressing her opposition to it. (DN 36, #454; DN 42, #496–97.) The communication between counsel for both parties immediately following KSP learning of the subpoena also satisfies the third "unusual circumstance." King was well aware that KSP had major concerns with the subpoena before it filed its motion to quash, so the filing of that motion could not have been a surprise. Given the circumstances of this case, a strict application of Rule 45 is not appropriate. *See American Elec. Power Co.*, 191 F.R.D. at 137 (holding that a non-party entity timely objected to a subpoena despite not serving written objections when it acted in good faith and its counsel was in active communication with the subpoenaing party).

Because the Court deems that KSP timely objected to King's subpoena, it will now turn to the merits of each of its objections.

### B. Subpoena Requests

#### 1. Subpoena Request No. 1

King's first subpoena requests seeks "A complete copy of the personnel file for Todd Harwood [including] both the personnel files maintained by the Human Resource Brand and at any post that Todd Harwood [sic] assigned." (DN 36-1, #464.) KSP objects to the subpoena because it could include Harwood's medical records and information concerning his personal life. (DN 42, #498.)

The Sixth Circuit does not recognize the common law doctrine of patient-doctor privilege, meaning that if Harwood's personnel file contains any physical medical records, they are not subject to automatic suppression. *Hancock v. Dodson*, 958 F. 2d 1367, 1373 (6th Cir. 1992). On the other hand, the Supreme Court has recognized that patient-psychiatrist records are

privileged information. *Jaffee v. Redmond*, 518 U.S. 1, 10–11 (1996). *See also U.S. v. Hayes*, F. 3d 578, 581 (6th Cir. 2000) ("A psychotherapist/patient evidentiary privilege has been well-established in the Sixth Circuit for some time."). The Sixth Circuit has placed a limitation on this privilege, however; when a party places his mental health at issue, that party has waived the privilege. *Maday v. Public Libraries of Saginaw*, 480 F. 3d 815, 821 (6th Cir. 2007) (citing *In re Zuniga*, 714 F. 2d 632, 637 (6th Cir. 1983)). Absent privileged information within Harwood's personnel file, the file is discoverable if it is relevant to any party's claim or defense. *Lamb v. Hazel*, 2013 WL 1411239 (W.D. Ky. April 8, 2013) at *8 (citing Fed. R. Civ. P. 26(b)(1)). As the preceding sentence implies, the scope of discovery under a subpoena is the same as the scope of discovery under Federal Rule of Civil Procedure 26. *Certain Underwriters at Lloyd's, London Subscribing to Policy No. NAC050614-1-NTL5-150226-4 v. Morrow*, 2017 WL 4532240 (W.D. Ky. Oct. 10, 2017) at *3 (citing *Queen v. City of Bowling Green*, 2017 WL 4355689 (W.D. Ky. Sept. 29, 2017) at *3).

The Court finds that King's Subpoena Request No. 1 seeks both privileged and irrelevant information. To recap, King's remaining claims are solely against Harwood, where she has alleged multiple violations under 42 U.S.C. §1983. (DN 1.) Harwood has denied any wrongdoing. (DN 28.) None of Harwood's asserted defenses in his response to King's complaint implicate the status of his mental health, and if any psychiatric records are in his personnel file, they are privileged and cannot be the subject of King's subpoena. (DN 28.) Turning to the rest of Harwood's personnel file, the Court agrees with KSP that his physical medical records and information regarding his personal life are wholly irrelevant to this lawsuit. King's allegations against Harwood concern actions he allegedly took against her while a KSP detective investigating a cold case murder, not during his private time. Moreover, the Court is

not convinced that King can bolster any of her arguments against Harwood based solely on the medical records within his personnel file, assuming that such records exist at all. For example, King's claim that Harwood improperly withheld information from a grand jury is unaffected by any illnesses or medications that could be documented in Harwood's personnel file. (DN 1, #12.)

The Court holds that no medical records, psychiatric records, or information related to Harwood's private life within his personnel file can be the subject of any subpoena by King.

### 2. Subpoena Requests Nos. 3 and 4

King's third and fourth subpoena requests seek related information, so the Court will address them together. These requests seek a copy of all internal affairs investigations and disciplinary actions in which Harwood was the subject during his employment at KSP. (DN 36-1, #464.) KSP once again raises two objections to King's subpoena. It first argues that any disciplinary or internal investigations records related to Harwood are protected by the executive privilege (sometimes referred to as the deliberative process privilege) and therefore cannot be produced. (DN 42, #498.) Alternatively, it argues that the disciplinary records are protected by the work product doctrine and/or attorney-client privilege. (*Id*.)

Whether the executive privilege protects internal affairs materials, such as the disciplinary records at issue here, is determined on a case-by-case basis by way of a balancing test. *Urseth v. City of Dayton*, 110 F.R.D. 245, 253 (S.D. Ohio 1986). "Only if the damage to the executive department or to the public interest from disclosure significantly outweighs the harm to plaintiff from nondisclosure will the privilege be upheld." *Id*. (citing *Dos Santos v. O'Neill*, 62 F.R.D. 448, 449 (E.D. Pa. 1974)). While there is no one definite set of factors that a court is required to consider when undertaking the balancing test, one prominent compilation of factors include the following ten, the majority of which are relevant in most cases:

(1) The extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information;

(2) The impact upon persons who have given information of having their identities disclosed;

(3) The degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure;

(4) Whether the information sought is factual data or evaluative summary;

(5) Whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question;

(6) Whether the police investigation has been completed;

(7) Whether any intra-departmental disciplinary proceedings have arisen or may arise from the investigation;

(8) Whether the plaintiff's suit is non-frivolous and brought in good faith;

(9) Whether the information sought is available through other discovery or from other sources; and

(10) The importance of the information sought to the plaintiff's case.

*Crawford v. Dominic*, 469 F. Supp. 260, 263 (E.D. Pa. 1979) (citing *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973)). *See also Urseth v. City of Dayton*, 110 F.R.D. 245, 253 (S.D. Ohio 1986) (adopting the *Frankenhauser* factors).

Here, the Court finds that the balancing test weighs in favor of the disclosure of the disciplinary records. The final three factors weigh in King's favor. First, Harwood's disciplinary history, if any, is crucial to King's case because her allegations of misconduct gain substantial credibility if Harwood had engaged in, and was punished for, similar conduct in the past. Second, to the best of the Court's understanding, KSP's disciplinary and internal investigation records lie with it and it alone; King has no other available means in which to gain access to them. Third, as to the merits of her lawsuit, King has survived Harwood's motion to

dismiss, as per the Sixth Circuit's decision in *King v. Harwood*, 852 F. 3d 568, 692 (6th Cir. 2017), establishing that her suit is non-frivolous. Finally, the Court does not believe that disclosing Harwood's disciplinary records (if any) will cause any substantial harm to KSP, its internal disciplinary process, or the public. If KSP followed its disciplinary and internal investigations procedures when investigating Harwood (in the event that he was the subject of such an investigation), then KSP will not be harmed if it produces those records. If it did not follow such procedures, then the public has a strong interest in knowing that. Finally, the requested disclosure is limited in scope and only encompasses one particular officer, Harwood, and is not directed at all disciplinary files in KSP's possession.

KSP also asserts that the disciplinary records are protected by the work-product doctrine and/or attorney-client privilege. (DN 42, #498.) The work product doctrine generally protects documents from disclosure that are prepared by or for an attorney in anticipation of litigation. *Reg'l Airport Auth. v. LFG, LLC*, 460 F.3d 697, 713 (6th Cir. 2006). The work product doctrine is broader than attorney-client privilege, the latter of which protects certain confidential communications between an attorney and his or her client. *Reed v. Baxter*, 134 F. 3d 351, 355–56 (6th Cir. 1998). What KSP does not make clear, however, is how the work product doctrine and/or attorney client privilege would apply to its disciplinary records. Therefore, when KSP responds to Subpoena Request Nos. 3 and 4, it shall produce a privilege log, adequate to allow an informed challenge to its designations, for any documents it believes are protected by either of the doctrines.

### 3. Subpoena Request No. 11

King's eleventh subpoena request asks KSP to produce all training materials related to investigating murders, investigating cold cases, and the "Reid Technique" of interviewing that Harwood received or participated in during his time at KSP. (DN 36-1, #465.) KSP objects on

the basis that producing all of Harwood's training materials would subject it to an undue burden, because it would be required to comb through "years and years" of his training and "locate the instructors" who taught Harwood. (DN 42, #499.) KSP speculates that some of Harwood's instructors may no longer be alive, and notes that it would have great difficulty in finding older written materials. (*Id.*)

If a subpoenaed nonparty asserts that compliance with a subpoena would be unduly burdensome, it must explain how exactly production of the requested documents would be burdensome. *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008). A subpoena is unduly burdensome in situations where it seeks information irrelevant to the case and when it is overbroad. *Singletary v. Sterling Transport Co., Inc.*, 289 F.R.D. 237, 241 (E.D. Va. 2012). Other courts have stated that what constitutes an undue burden is a case specific inquiry that turns on "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described[,] and the burden imposed." *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 53 (S.D.N.Y. 1996) (internal citations omitted).

The Court finds that the balancing test weighs in favor of King. King has limited her subpoena request to only three topics – investigating murders, investigating cold cases, and the Reid Technique of interviewing. (DN 36-1, #465.) She did not request all materials related to Harwood's training throughout his career, only the training he received in those three areas. Based on this limitation, the Court cannot conclude that the subpoena is overbroad. Moreover, Harwood's training is highly relevant to King's claims; with access to his training materials, it might be possible for King to show, for example, that Harwood did not act in accordance with

his training during his investigation of her. Therefore, the Court finds that it would not be unduly burdensome for KSP to compile documentation relating to Harwood's training history.

### 4. Subpoena Request No. 14

King's fourteenth subpoena request seeks "Harwood's time records for the years 2006, 2007, 2008, and 2012." (DN 36-1, #465.) KSP objects to the production of Harwood's 2012 time records, claiming that they are "outside the scope of the time period that is relevant for this action." (DN 42, #499.) More specifically, KSP states that because Harwood was only involved in King's investigation from 2006 to 2008 (when she entered an Alford plea), his time records from 2012 have no bearing on the case. (*Id.*) KSP does not appear to object to the production of Harwood's time records for 2006–2008, so the Court deems any objection to the production of those records waived.

KSP's arguments concerning relevance are unpersuasive. Contrary to KSP's assertion that Harwood's time records for 2012 are irrelevant, King has alleged that in 2012, Harwood suppressed evidence that another individual, Richard Jarrell, committed the crime for which she was convicted. (DN 1, #17–18.) King claims that Harwood, upon learning that Jarrell confessed to murdering Kyle Breeden, interviewed Jarrell while Jarrell was incarcerated and coerced him to retract his confession. (*Id.*) Harwood's time records for 2012 are therefore relevant in determining if he engaged in a scheme to hide exculpatory evidence, in doing so violating King's civil rights.

### 5. Subpoena Request No. 15

King's final subpoena requests "[a]ny e-mails, for the time period of May 1, 2006, to the present, which in any way relate to, or contain, the following: Susan King, KSP case number 05-98-1121, [and] Kyle Breeden." (DN 36-1, #464–65.) KSP objects to the production of any

emails related to those topics on two grounds: running the searches required would be unduly burdensome and the request likely encompasses privileged communications. (DN 42, #499.)

While the Court believes that KSP's undue burden argument lacks merit, it agrees that King's email request is grossly overbroad. KSP has not explained how the request would be burdensome other than claiming it would be "time intensive." (DN 42, #499.) While the Court is aware that large-scale email searches are expensive and can consume considerable resources, it is common in modern litigation for courts to require entity parties to conduct such searches – within reason. *See, e.g.*, *Goree v. UPS, Inc.*, 2015 WL 11120572 (W.D. Tenn. Oct. 30, 2015). Where this request conflicts with the proper scope of discovery is King's demand of "any emails" concerning Susan King and Kyle Breeden "to the present," which would naturally include privileged emails between KSP's employees and its counsel regarding this lawsuit and material protected under the work product doctrine. Moreover, King provided no limitation on the content of the emails, instead requesting all emails "which in any way relate to, or contain" her name, Breeden's name, or an internal case number. (DN 36-1, #464–65.) It is axiomatic that not all emails containing those three phrases will be relevant to King's case, and if King wants access to KSP emails, she must narrow her subpoena request.

### IV. Conclusion

For the reasons stated above, the Court **GRANTS** KSP's motion to quash (DN 36) in part and **DENIES** the motion in part. Subpoena Request Nos. 1 and 15 are **QUASHED**. KSP is still obligated to respond to Subpoena Request Nos. 2–14. If King wishes to seek the information it requested in Subpoena Requests Nos. 1 and 15, it may serve KSP with a new subpoena consistent with this ruling.

cc: Counsel of record