UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| SUSAN JEAN KING, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 3:15-CV-762-CHB |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION AND** |
| TODD HARWOOD, ) | **ORDER ON OBJECTIONS TO** |
| ) | **MAGISTRATE JUDGE'S REPORT** |
| Defendant. ) | **AND RECOMMENDATION** |
| ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on Defendant Todd Harwood's Objections to United States Magistrate Judge Colin H. Lindsay's Report and Recommendation. [R. 109] For the reasons laid out below, the Court will adopt the Magistrate Judge's Report and Recommendation and overrule Defendant's objections.

## I. Background Facts

Magistrate Judge Lindsay's Report and Recommendation ably sets out the full factual background of this case. Briefly, the issue at hand centers around the cause of two bullet holes discovered by Kentucky State Police ("KSP") in 2006 during an investigation led by Defendant Todd Harwood ("Harwood"), then a KSP detective, and the relevance of those bullet holes to Plaintiff Susan King's ("King") claims against Harwood.

Defendant Harwood was investigating Plaintiff King for the murder of Kyle Breeden. Breeden was found dead in the Kentucky River on November 5, 1998. [R. 109 p. 1] He died from two non-exiting .22 caliber magnum gunshot wounds to the head. [*Id.*] During the initial 1999 investigation KSP attempted, but was unable, to get a search warrant for King's home based on

1

information that there were bullet holes in her floor. [R. 1 p 7; R. 79 p. 2; R. 109 pp. 1–2] A few weeks later, King allowed Sergeant Carey Duncan to see her floor, at which time Duncan observed two bullet holes. [R. 109 p. 2] King explained to Duncan that she had fired them to scare away another individual who had been making sexual advances at her. [*Id.*] Sergeant Duncan stated in his deposition that he did not remember if he saw any bullet holes other than the two he was shown, but hoped that he would have included such an important finding in his report. [*Id.*] However, Sergeant Duncan also testified that there may have been a rug on the floor at the time, and he did not conduct a full search of the floor since he was there by King's invitation, and she did not let him get on his hands and knees to look at the entirety of the floor. [*Id.* pp. 2–3]

Seven years later, in May of 2006, Detective Harwood was assigned the now-cold case. [*Id.* p. 3] After Harwood obtained search warrants for King's home (more on this later), KSP discovered there were in fact four bullet holes in King's floor, not just the two Sergeant Duncan had seen in 1999. [*Id.*] KSP recovered a .22 caliber bullet from the floor, but it did not match bullets found in Breeden's head. [*Id.*] The bullet in Breeden's skull was a .22 caliber magnum bullet with a copper jacket, while the bullet found in King's kitchen floor was a .22 caliber bullet with a copper wash. [*Id.*] One of the bullet holes tested positive for male DNA. [*Id.*] The KSP forensic lab also conducted a presumptive blood test which tested positive, although it could not be matched to Breeden. [*Id.*] However, it is unknown whether the bullet hole from which blood and DNA was recovered was from one of the two bullet holes that Sergeant Duncan saw in 1999. [*Id.*]

In 2007, King was indicted for murdering Breeden and tampering with physical evidence. [*Id.*] After entering an *Alford* plea to manslaughter and tampering with physical evidence, King

was incarcerated until she was ultimately exonerated in 2014, when new evidence showed that another person had confessed to Breeden's murder. [R. 1 p. 19; R. 109 p. 4]

King filed a Verified Complaint against numerous defendants, including Harwood, under 42 U.S.C. § 1983 and other state law causes of action. [R. 109 p. 4] The district court granted a hybrid motion to dismiss/motion for summary judgment, which was partially reversed by the Sixth Circuit. King's remaining claims are those against Harwood for malicious prosecution under § 1983, and her state law claims against Harwood for intentional, reckless, or negligent infliction of emotional distress, civil conspiracy, and negligence/gross negligence/recklessness. *See King v. Harwood*, 852 F.3d 568, 591–92 (6th Cir. 2017). King has proceeded on those claims. [R. 109 p. 4]

On May 30, 2018, the parties sat for King's deposition. [*Id.*] The questions turned to the two additional bullet holes KSP discovered in King's floor during Harwood's 2006 investigation. [*Id.*] Harwood's counsel asked King, "[h]ow did the bullet holes that were discovered in the later investigation get there?" [*Id.*] King refused to answer, stating it "had nothing to do with this case," and her counsel objected based on relevance. [*Id.* pp. 4–5] The parties discussed the matter at length, but agreed to continue the deposition without King answering the question. [*Id.* p. 5]

The parties then had a telephonic status conference with Magistrate Judge Lindsay to discuss the dispute. [*Id.*] The Magistrate Judge gave what he describes as "preliminary guidance" that he believed the cause was relevant but did not foreclose King from filing for a protective order. [*Id.*] After discussing the matter with counsel, King decided not to file a motion. Instead, the parties filed a joint status report on October 26, 2018, agreeing that King would sit for a second deposition [*Id.*] On November 21, 2018, however, the day before King's scheduled deposition, plans changed. [*Id.*] King's counsel contacted Harwood's counsel stating that King

3

would assert her Fifth Amendment privilege during the deposition in response to questions about the cause of the two additional bullet holes first discovered in 2006. [*Id.*] King's counsel indicated that King had planned on sitting for the deposition until that day, when counsel "learned additional facts that were not previously known, which changed his determination." [*Id.* p. 6] Harwood choose to have the deposition anyway, and King asserted her Fifth Amendment privilege in response to questions about the cause of the two additional bullet holes. [*Id.*] In a second telephonic status conference with Magistrate Judge Lindsay, Defendant Harwood sought, and was granted, leave to file the instant motion.

## II. Standard of Review

Under Federal Rule of Civil Procedure 72(b)(2), a petitioner has fourteen days after service to register any objections to the Magistrate Judge's Report and Recommendation or else waive his rights to appeal. Non-dispositive matters are reviewed under a "limited" standard of review: the district court "must . . . modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993); Fed. R. Civ. P. 72(a). Dispositive matters, however, are reviewed *de novo* if properly objected to. Fed. R. Civ. P. 72(b)(3). In order to receive *de novo* review by this Court, any objection to the recommended disposition must be specific. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). A specific objection "explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic." *Robert v. Tesson*, 507 F.3d. 981, 994 (6th Cir. 2007) (quoting *Smith v. Chater*, 121 F.3d 709, 1997 WL 415309, at *2 (6th Cir. 1997)). A general objection that fails to identify specific factual or legal issues from the Recommendation, however, is not permitted, since it duplicates the magistrate's efforts and wastes judicial economy. *Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991).

4

Defendant Harwood made a timely objection to the Report and Recommendation [R. 111] For several reasons, the Court will review the Report and Recommendation applying a *de novo* standard of review. Harwood titled the instant motion as a "motion to dismiss," but the motion sought dismissal as a Rule 37(b) sanction for King's refusal to produce discovery on the source of the two bullet holes in question. [R. 76] This Court referred the matter to Magistrate Judge Lindsay for a Report and Recommendation. [R. 83] The Magistrate Judge recommended denying Harwood's request to dismiss the case as a discovery sanction pursuant to Rule 37(b). [R. 111] Magistrate Judge Lindsay also elected to treat Defendant's Motion to Dismiss as a motion to compel, given the parties' extensive briefing on whether or not King should have to answer the disputed questions. [R. 109 p. 9] He then found that the information Harwood sought through discovery was irrelevant to the claims and defenses of this action, meaning that Harwood did not meet the standard to show sanctions were warranted under Rule 37 in the Fifth Amendment context, and the Court therefore did not need to consider alternative sanctions. [*Id.* p. 14] Harwood now objects to Magistrate Judge Lindsay's recommendation that his Motion to Dismiss be denied [R. 111 pp. 1; 6], and since Magistrate Judge Lindsay treated his Motion to Dismiss as a motion to compel under Rule 37, he objects to the denial of that motion as well. [R. 111 p. 1–2]

The focus of Harwood's objection is really that the Magistrate Judge erred in finding that the information he sought, the cause of two bullet holes in King's floor, was irrelevant. [R. 111 pp. 1–2] Typically, a Magistrate Judge's order denying discovery would be a non-dispositive order warranting a deferential review under the "clearly erroneous or contrary to law" standard. Fed. R. Civ. P. 72(a). However, Harwood's motion sought disposition of the case, albeit as a discovery sanction. Further, despite barely developing the argument in his objection, Harwood "maintains" both that the sanctions were indeed appropriate, and that the case should still be dismissed.

[Id. p. 1 n.1; 6] Thus, in an abundance of caution, the Court referred the matter for a Report and Recommendation, and has conducted a *de novo* review of those matters that are the subject of specific written objection. In any event, the standard of review does not make a difference in this case: having conducted a *de novo* review of the Magistrate Judge's Report and Recommendation and Defendant's Objections, the Court is in complete agreement with the Report and Recommendation that Defendant's Motion to Dismiss should be denied, it is prudent to construe Defendant's Motion to Dismiss as a motion to compel under Fed. R. Civ. P 37(b), and the motion to compel should be denied.

### III. ANALYSIS:

#### A. Motion for Sanctions Under Fed. R. Civ. P. 37(b)

The Court agrees with Magistrate Judge Lindsay that Defendant Harwood's Motion to Dismiss should be denied, as sanctions are not appropriate in this case.

##### a) Rule 37 Sanctions are Inappropriate Because King Did Not Fail to Obey a Court Order

Fed. R. Civ. P. 37(b) provides that if a party "fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 25, or 37(a), the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). Such "just orders" may include "dismissing the action or proceeding in whole or in part." *Id.* at 37(b)(2)(A)(v). However, the Sixth Circuit has stated that "[b]y its terms, Rule 37(b) requires a party seeking a sanction of default against a party to secure a court order compelling disclosure or discovery." *Burley v. Gagacki*, 729 F.3d 610, 618 (6th Cir. 2013). In *Burley*, the Sixth Circuit affirmed the district court's denial of a motion for a sanction of default under Rule 37, because the moving party had never moved to compel discovery even though "it was apparent that [the opposing party] did not fully respond to the interrogatories." *Id.* at 618. That being the case, there was no violation of a

6

court order to justify any sanction under Rule 37. *Id.* Further, the Sixth Circuit has made clear that dismissal is the sanction of last resort. *See id.*; *Beil v. Lakewood Eng'g and Mfg. Co.*, 15. F.3d 546, 552 (6th Cir. 1994).

Harwood claims that Rule 37(b) sanctions in the form of dismissal are still appropriate despite not having obtained an order compelling discovery. [R. 76 p. 12; R. 111 p. 6] Harwood cites two cases from other circuits for this proposition. The first is a Ninth Circuit case, which Harwood cites for the proposition that the "order" required "has been read broadly and does not require a formal order." [R. 111 p. 6] However, as Harwood identifies no *informal* order which he claims King disobeyed, this proposition is not persuasive to the Court. The second case, *McMullen v. Bay Ship Management*, 335 F.3d 215, 217 (3d Cir. 2003), is from the Third Circuit. Harwood cites that case for the proposition that an order is not required under Rule 37 where an order to compel would have been a meaningless formality because it "would have been an exercise in futility." [R. 111 p. 6] However, not only is *McMullen* not the law of this circuit, it also does not endorse Harwood's proposed remedy. In *McMullen*, the plaintiff invoked his Fifth Amendment privilege and refused to answer discovery questions because he had been named, but not yet charged, in an information filed in another federal district court charging one of his employees with federal crimes. *McMullen*, 335 F.3d at 216. Defendant filed a motion to compel, but when ruling on that motion, the district court imposed sanctions because it concluded that "in the view of the plaintiff's unequivocal assertion that he would invoke his Fifth Amendment privilege, the issuance of an order compelling discovery would be a futile act." *Id.* at 217. The issue had been briefed and argued before the magistrate judge at a pre-trial conference, and the plaintiff's position was clearly stated (that he would not participate in discovery due to the pending investigation). *Id.* There was no mystery as to how the plaintiff would respond when

discovery requests were made, and there had already been active judicial review of the discovery dispute. *Id.* As such, the Third Circuit agreed with the district court that requiring a formal order to compel before imposing sanctions would have been "a meaningless formality." *Id.* However, the Third Circuit denied the very remedy that Harwood seeks—dismissal of the case. *Id.* at 219. In fact, it reversed the district court's decision to dismiss the case, holding that it was an abuse of discretion. *Id.* Therefore, even the non-binding authority Defendant cites to support his claim did not endorse his remedy, despite facing a scenario where sanctions would have been easier to justify. Thus, the Court finds that the Magistrate Judge correctly found that Harwood's motion for sanctions necessarily fails due to the lack of a motion to compel.

### b) Rule 37 Sanctions are Inappropriate Under the Applicable Standard

Even if Harwood's motion for sanctions was appropriate in the absence of a motion to compel, the Court would not reverse the Magistrate Judge's ruling, because sanctions are not merited here. While the Magistrate Judge did not examine the general Rule 37 factors in favor of the more specific test which other courts apply in the Fifth Amendment context implicated here, the Court will briefly examine these factors out of an abundance of caution.

The Sixth Circuit has held that four factors are relevant when analyzing whether sanctions are appropriate under Rule 37. *Reg'l Refuse Sys. v. Inland Reclamation Co.*, 842 F.2d 150, 153–54 (6th Cir. 1988). They are: 1) whether the party's failure to cooperate is due to willfulness, bad faith, or fault; 2) whether the adversary was prejudiced by the party's failure to cooperate in discovery; 3) whether the party was warned that failure to cooperate could lead to the sanction; and 4) whether less drastic sanctions were first imposed or considered. *Id.*; *see also Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990).

With respect to the first factor, Sixth Circuit precedent is clear that dismissal is inappropriate absent "a clear record of delay or contumacious conduct." *See Peltz v. Moretti*, 292 F. App'x 475, 479 (6th Cir. 2008) (quoting *Freeland v. Amingo*, 103 F.3d 1270, 1277 (6th Cir. 1997)). King's actions during discovery, while potentially frustrating to Harwood, hardly constitute bad faith or contumacious conduct. Harwood did not obtain an order to compel King to answer questions about the cause of the two additional bullet holes after the first status conference with the Magistrate Judge. Instead, it appears that both parties intended to participate fully in King's second deposition after Magistrate Judge Lindsay's preliminary guidance, which indicated that the information might be relevant. [R. 79 p. 5] However, the day before the scheduled deposition, King's counsel learned of "additional facts that were not previously known," and advised her to invoke her Fifth Amendment privilege. [*Id.*] Harwood has not presented any reason to disbelieve Plaintiff's counsel on this point, and the fact that King did not move for a protective order during the parties' first status conference does not mean she was barred from changing strategy in response to counsel learning new information. Moreover, King gave Harwood notice that she would be asserting her Fifth Amendment privilege the day before the deposition began, yet Harwood chose to proceed anyway rather than seek an order to compel. [R. 76 p. 9–10] While Harwood may have been frustrated by the late notice, it still does not meet the level of conduct warranting sanction, let alone a sanction as severe as dismissal. This is particularly true considering that 1) there was no court order compelling King to cooperate with the discovery request, and 2) the Court now affirmatively rules that King does not have to do so. *See Burley*, 729 F.3d at 618. This factor thus weighs in favor of King.

The second factor asks whether Harwood has been prejudiced by King's failure to cooperate in discovery. This occurs if the non-cooperating party's actions "prevent [the other

party] from obtaining evidence essential to the preparation of its defense." *Universal Health Group v. Allstate Ins. Co.*, 703 F.3d 953, 956 (6th Cir. 2013). As explained more fully below, Harwood will not be prejudiced by King refusing to answer questions about the cause of the additional two bullet holes, because that information is irrelevant to King's claims and Harwood's defenses. This factor thus weighs in favor of King.

The third factor, whether the party has been warned that failing to cooperate may lead to sanctions, weighs in favor of King. King was invited to file for a protective order, but at no point did the Magistrate Judge indicate that she faced sanctions. [R. 109 p. 5]

Finally, the fourth factor is whether alternative sanctions would be more appropriate. When balancing a party's Fifth Amendment rights against a discovery request, "dismissal is appropriate only where other, less burdensome, remedies would be an ineffective means of preventing unfairness to defendant." *Wehling v. Columbia Broadcasting Sys.*, 608 F.2d 1084, 1088 (5th Cir. 1979). As *no* sanctions are warranted, this factor also favors King. All four factors point in the same direction: King did not engage in bad faith behavior or violate any court order that would warrant sanctions in this case, let alone warranting the extreme sanction of dismissal.

### B. Motion to Compel

The Court also agrees with the Magistrate Judge's finding that the cause of the two additional bullet holes, first discovered in 2006, is irrelevant to King's claims and Harwood's defenses in this case. That being so, King's invocation of the Fifth Amendment privilege forecloses compulsion of her deposition testimony on this issue, and does not warrant dismissal of the case to cure any prejudice to Harwood.

Federal Rule of Civil Procedure 37 provides that "a party may move for an order compelling disclosure or discovery" when a deponent fails to answer a question at a deposition.

10

Fed. R. Civ. P. 37(a)(1)(3)(B)(i). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). "Relevant evidence" is evidence that "has any tendency to make a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "[I]t is well established that the scope of discovery is within the sound discretion of the trial court." *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981); *see also S.S. v. E. Ky. Univ.*, 532 F.3d 445, 451 (6th Cir. 2008); *Hadfield v. Newpage Corp.*, No. 5:14-CV-00027-TBR-LLK, 2016 WL 427924, at *3 (W.D. Ky. Feb. 3, 2016).

The Fifth Amendment privilege against self-incrimination is applicable in civil proceedings where a witness's answer could incriminate the witness in a future criminal proceeding. *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973). The Supreme Court has held that the court cannot make a litigant's assertion of his or her Fifth Amendment privilege "costly." *Griffin v. California*, 380 U.S. 609, 614 (1965). The Supreme Court has further clarified that "a [d]istrict [c]ourt cannot compel [a litigant] to answer deposition questions, over a valid assertion of his Fifth Amendment right, absent a duly authorized assurance of immunity at the time." *Pillsbury Co. v. Conboy*, 459 U.S. 248, 256–57 (1983).

However, that does not mean that assertions of the privilege will never have adverse consequences for civil litigants. There are circumstances where the "assertion of the Fifth Amendment privilege would thwart 'discovery of issues at the heart of plaintiff's lawsuit,'" and courts have held that sanctions, such as dismissal, are appropriate in response to a motion to compel. *Swann v. City of Richmond*, 462 F. Supp. 2d 709, 712 (E.D. Va. 2006) (quoting *Wehling*,

608 F.2d at 1086. "To hold otherwise would, in terms of the customary metaphor, enable [a] plaintiff to use his Fifth Amendment shield as a sword." *Wehling*, 608 F.2d at 1087.

As both parties have argued, in this case the Court must balance the plaintiff's Fifth Amendment right with the unfairness to the defendant. *Id.* at 1088. However, "the Fifth Amendment privilege should be upheld unless defendants have substantial need for particular information and there is no less burdensome effective means of obtaining it." *Serafino v. Hasbro, Inc.*, 82 F.3d 515, 518 (1st Cir. 1996); *see also Black Panther Party v. Smith*, 661 F.2d 1243, 1272 (D.C. Cir. 1981). Here, Harwood has no substantial need for information on the cause of the two bullet holes. Thus, King's assertion of the Fifth Amendment privilege does not require dismissal to balance the equities between the parties.

### a) King Has No Substantial Need for the Requested Information

As noted, King's remaining claims are a malicious prosecution claim under § 1983, and state law claims of intentional, reckless, or negligent infliction of emotional distress, civil conspiracy, and negligence/gross negligence/recklessness. To prove malicious prosecution, King must show that 1) Harwood initiated or participated in the decision to initiate criminal proceedings against her; 2) there was no probable cause for the criminal prosecution; 3) King suffered a deprivation of liberty, as understood under Fourth Amendment jurisprudence, apart from the initial seizure; and 4) the criminal proceeding was resolved in King's favor. *King v. Harwood*, 852 F.3d 568, 580 (6th Cir. 2017); *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010). Her state law claims also all depend on Harwood's actions and intentions during his investigation and prosecution of King. *See Dukes v. Mid-Eastern Athletic Conference*, 213 F. Supp. 3d 887, 893 (W.D. Ky. 2016) ("To sustain a claim for intentional infliction of emotional distress, the plaintiff must prove (1) the wrongdoer's conduct was intentional or reckless, (2) the conduct was

outrageous and intolerable such that it offends the generally accepted standards of decency and morality, (3) a causal connection between the wrongdoer's conduct and the plaintiff's injuries, and (4) severe emotional distress."); *Pinnacle Surety Servs., Inc. v. Manion Stigger, LLP*, No. 3:15-cv-364-DJH, 2018 WL 1522698, at *9 (W.D. Ky. Mar. 28, 2018) (quoting *Vivid Impact Co. v. Ellis*, No. 3:17-cv-509-JHM, 2017 WL 5505024, at *5 (W.D. Ky. Nov. 16, 2017)) ("The elements of a civil conspiracy are: (1) an agreement or combination, (2) that is unlawful or corrupt, (3) entered into by two or more persons, (4) for the purpose of accomplishing an unlawful goal."); *Fulcher v. United States*, 88 F. Supp. 3d 763, 770 (W.D. Ky. 2015) (noting that to succeed on a negligence claim under Kentucky law, a plaintiff must prove (1) a duty of care owed by the defendant, (2) a breach of that duty; and (3) actual and proximate causation of an injury to the plaintiff").

Harwood argues that the cause of "all four bullet holes, including those observed for the first time in 2006, are relevant to King's claims and Harwood's defenses *as they formed a substantial portion of the probable cause for King's prosecution*[.]" [R. 111 pp. 10–11 (emphasis added)] King would not be able to succeed in her malicious prosecution claim if Harwood had probable cause for the prosecution. Harwood thus objects to Magistrate Judge Lindsay's finding that he has no substantial need to discover the cause of the two additional bullet holes. [R. 111 p. 8]

For malicious prosecution claims, "[a]uthorities must have probable cause to initiate a criminal proceeding against a suspect at the time it is commenced." *Mott v. Mayer*, 524 F. App'x. 179, 188 (6th Cir. 2013) (citing *Hartman v. Moore*, 547 U.S. 250, 258, (2006)). "Probable cause determinations involve an examination of all the facts and circumstances *within the officer's knowledge at the time of an arrest*." *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999) (emphasis in original); *see Carroll v. United States*, 267 U.S. 132, 162 (1925); *see also*

*Sykes*, 625 F.3d at 310–311 (determining whether there was probable cause in a malicious prosecution case based on the "totality of the circumstances at the time of the Plaintiffs' arrest and through the time that the criminal proceeding against them commenced"). Therefore, the actual cause of the additional two bullet holes is only relevant to whether the King investigation lacked probable cause if Harwood knew the cause of the bullet holes *at that time*. The same goes for the relevance of the actual cause of the bullet holes to Harwood's actions or intentions during his investigation. If Harwood did not know the cause of the two additional bullet holes, he could neither say that the unknown cause gave his investigation probable cause, nor say that his actions or motivations in his investigation were based on the unknown cause.

In his objection to the Magistrate Judge's recommendation, Harwood admits that he "did not know" the cause of the two additional bullet holes first observed in 2006. [R. 111 p. 10] Therefore, it would have been impossible for him to rely on that information when making his probable cause determination. *See Estate of Dietrich*, 167 F.3d at 1012. Despite this admission, Harwood claims that his "reasonable belief" alone (that the two additional bullet holes were caused during Breeden's murder), and King's dispute as to its reasonableness, entitles him to discover the cause of the bullet holes over King's assertion of her Fifth Amendment privilege. [R. 111 p. 10] But that is backwards. Indeed, if Harwood's argument for what one might term "retroactive probable cause" were valid, it would imply the end of the exclusionary rule against evidence improperly obtained from an unlawful search. Yet that seems to be the thrust of his argument. In his motion to dismiss, Harwood asserts that "[i]f these bullet holes were shot into the floor during the commission of the Breeden murder, then Harwood's actions could not have possibly given rise to any of the claims that King is asserting in this matter." [R. 76 p. 13] But that is not true: it is a bedrock principle of criminal law that faulty probable cause determinations

14

are not retroactively cured merely because the government later procures evidence of guilt. The point of the "fruit of the poisonous tree" doctrine is that, where it applies, it excludes just such "fruit." Regardless of whether there is some as-yet undiscovered evidence of King's guilt for murder, it does not change the illegality of any malicious prosecution. *King*, 852 F.3d at 589, n.5 ("we have held that 'even if independent evidence establishes probable cause against a suspect, it would still be unlawful for law-enforcement officers to fabricate evidence in order to strengthen the case against that suspect'") (citing *Webb v. U.S.*, 789 F.3d 647, 670 (6th Cir. 2015) (citation omitted).

Unsurprisingly, Harwood cites no caselaw to suggest that new information he learns in 2019 will affect a probable cause determination he made back in 2006, or his actions or motivations during his investigation at that time. As such, the Court cannot see how the cause of the two additional bullet holes, unknown to Harwood, could be relevant to his probable cause determination or actions during his investigation. Plaintiff concedes, and the Court agrees, that Harwood can testify all he wants about what he *believes* caused the bullet holes. [R. 114 p. 12] He cannot, however, use discovery in an attempt to retroactively bolster a probable cause determination he made thirteen years ago.

Harwood also argues that the cause of the two additional bullet holes is relevant to King's claims that he "falsified evidence and fabricated stories" in his investigation. [R. 111 p. 9] He points to claims King makes about the bullet holes, such as her claim that the .22 caliber bullet fragment recovered from her floor could not be matched to bullets recovered from Breeden's skull. [R. 111 p. 9; R. 76 pp. 2–3] As Magistrate Judge Lindsay quite clearly demonstrates, none of these factual allegations are tied to the affirmative causes of the two additional bullet holes. [R. 109 p. 13] King does not claim that Harwood falsified or fabricated the bullet holes themselves.

15

Rather, King's claims center on Harwood's actions and intentions during his investigation based on the information he had at the time, including the information he had about the four bullet holes. [R. 109 p. 13] Therefore, Harwood has not demonstrated a substantial need for information about their cause, and his motion to dismiss as a sanction for failing to engage in discovery about that information must fail.

## IV. Conclusion

After conducting a *de novo* review of the matters raised by plaintiff's objections, the Court fully agrees with the Magistrate Judge's Report and Recommendation. The Magistrate Judge's analysis of the issues and application of the law are appropriate, and his recommendations are adopted.

Accordingly, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

1. The Motion to Dismiss filed by Defendant Todd Harwood [**R. 76**] is **DENIED**.

2. The **Report and Recommendation** [**R. 109**] is **ADOPTED** as the opinion of the Court.

3. The Defendant's **Objection** [**R. 111**] is **OVERRULED**.

4. Defendant's **Motion for Oral Argument** on his pending Motion for Summary Judgment and Harwood's Objection to the Report and Recommendation [**R. 112**] is **DENIED IN PART**, as to the request for oral argument on the objection.



CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY